IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMY J. BREWER, | ) | CASE NO.  1:23CV1241 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE CHARLES ESQUE FLEMING |
| vs. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

Plaintiff, Amy J. Brewer, ("Plaintiff" or "Brewer"), challenges the final decision of Defendant, Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 et seq. ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be **AFFIRMED.**

## I.    PROCEDURAL HISTORY

In April 2021, Brewer filed an application for SSI, alleging a disability onset date of February 18, 2021. Transcript ("Tr.") at 219-27. She claimed disability due to diastolic dysfunction, epilepsy, anxiety, depression and post-traumatic stress disorder (PTSD). (Tr. 219) Her application was denied initially and upon reconsideration, and Brewer requested a hearing before an administrative law judge ("ALJ").  (Tr. 86-106, 121)

1

On June 14, 2022, ALJ Kimberly Cromer held a hearing on Brewer's application. (Tr. 52-84) Brewer, represented by counsel, and a vocational expert testified. (*Id.*) On September 27, 2021, the ALJ issued a written decision finding Brewer was not disabled. (Tr. 14-44) The ALJ's decision became final on July 29, 2022, when the Appeals Council declined further review. (Tr. 1-6)

Brewer then filed the instant Complaint challenging the Commissioner's final decision. (Doc. No. 1)  The parties have completed briefing in this case. (Doc. Nos. 7, 9, 10) Brewer presents two assignments of error for the Court's review:

1. Whether the ALJ properly considered the persuasiveness of Ms. Fagan's and Dr. Amurao's opinions, where she discussed supportability and consistency and where neither source identified additional ongoing functional limitations beyond those found in the RFC.

2. Whether the ALJ needed to further develop the record by obtaining yet another opinion, where there were at least four opinions, include two from Plaintiff's own sources and one from a state agency physician who reviewed all the relevant objective evidence.

(Doc. No. 9 at 11-25)

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Brewer was born in 1980 on the date the application was filed making her a "younger individual age 18-44," under social security regulations.  (Tr. 42) *See* 20 C.F.R. § 416.963.  She has at least a high school education. (*Id.*)

### B.    Relevant Medical Evidence[1]

On February 18, 2021, Melodie Fagan, APRN-CNP treated Brewer following an emergency room visit for bronchitis. (Tr. 336-46; 385-86) Brewer reported fatigue, cough, post nasal drainage, stabbing chest pain, and shortness of breath (SOB) with activity. (Tr. 385) She was assessed with

---

[1] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the relevant evidence cited in the parties' briefs.

acute bronchitis. (Tr. 386) She was provided steroids and an inhaler. *Id.* That same day, CNP Fagan wrote a letter stating that Brewer had been diagnosed with "bronchitis with some significant shortness of breath with activity. She reports her symptoms are controlled when she does not exert herself. . . . she has requested that she be permitted to return to work with light-duty. I am agreeable" (Tr. 654).

On March 1, 2021, Brewer treated with pulmonologist Mesfin Seifu, M.D. (Tr. 377-81) Brewer reported SOB even when inactive. (Tr. 377) Her cardiac and pulmonary examinations were unremarkable. (Tr. 381)  Dr. Seifu ordered a pulmonary function test (PFT), an echocardiogram, and a 6-minute walking test. *Id.* The PFT showed moderate to severe obstruction, the echocardiogram was normal, and the 6-minute walking test showed no oxygen desaturation (Tr. 454). She was prescribed Trelegy and was diagnosed with Chronic Obstructive Pulmonary Disease ("COPD") and asthma. (Tr. 457-58)

In May 2021, CNP Fagan completed a cardiac questionnaire. (Tr. 425-27) She stated that she had not seen Brewer since February, but noted that Brewer had a normal echocardiogram and normal ECG in February and March of 2021. (Tr. 425) CNP Fagan stated that Brewer's symptoms were increased with physical activity and deceased with rest. *Id.*  Nonetheless, CNP Fagan stated it was unknown how often Brewer had symptoms or if symptoms persisted despite treatment. (Tr. 426) When asked if Brewer had any work-related restrictions, CNP Fagan answered "None, to my knowledge." *Id.*

On May 26, 2021, Brewer treated with pulmonologist Guillermo Amurao, M.D. (Tr. 454-59) Brewer reported the following respiratory issues: cough, chest tightness, SOB, wheezing, and environmental allergies. (Tr. 455) On examination, Dr. Amurao found decreased breath sounds with no stridor, wheezing, rhonchi, or rales. *Id.* In addition to medication, she was referred to a

3

pulmonary rehabilitation program. (Tr. 458)  On June 9, 2021, Brewer had a cardiology consult with Wisam Martini, M.D. (Tr. 469-75) Dr. Martini recommended a stress test and to follow up with pulmonology. (Tr. 475)

Between June 14th through September 27, 2021, Brewer underwent cardiopulmonary rehabilitation. (Tr. 464-67, 480-98, 509-10, 521-83, 903-06, 913-17, 923-24) Her exercise tolerance was often recorded as fair. (*E.g.*, Tr. 480, 482, 509, 529, 531, 533, 535, 537, 539, 545, 552) In July 2021, Brewer also treated with Dr. Amurao and CNP Fagan. At a July 2, 2021, visit with Dr. Amurao, Brewer reported no change in symptoms with Trelegy and she continued to have SOB with exertion (moderate recovery time). (Tr. 736-41) At her July 15, 2021, visit with CNP Fagan, Brewer reported that she had been unable to work the past 5 months secondary to SOB with activity. (Tr. 643-45) It was noted Brewer "has shown significant improvement" in pulmonary rehabilitation. *Id.* Here breathing issues were described as chronic and stable. (Tr. 644)

On September 3, 2021, CNP Fagan treated Brewer following her emergency room visit for back pain. (Tr. 637) No pulmonary issues were noted and a pulmonary exam was unremarkable. (Tr. 637-39)  On September 9, 2021, Dr. Amurao treated Brewer. (Tr. 712-16) On examination, there were decreased breath sounds in the bilateral lungs. (Tr. 714) Breathing tests indicated moderately severe obstructive ventilator defect compatible with moderately severe COPD. (Tr. 656) Brewer requested a letter stating she was unable to work. (Tr. 712) It was suspected Brewer's shortness of breath was multifactorial: cardiopulmonary disease, obesity, and deconditioning. (Tr. 715) On September 29, 2021, Brewer was discharged from pulmonary rehabilitation. (Tr. 904) It was noted that Brewer did well in rehab and "thus far denied exercise induced complaints." *Id.* The next day, Dr. Amurao drafted a letter stating that Brewer could return to work with the following conditions: 5-pound weight restriction, no prolonged standing/heavy weight-bearing, prolonged

4

walking, avoid exposures to dusts, fumes, strong odors, excessive heat/humidity. (Tr. 652) Dr. Amurao explained the "modified duty" would continue "until her follow up with [his] office January 14, 2022." *Id.*

On January 14, 2022, Dr. Amurao saw Brewer for a 6-month follow up appointment. (Tr. 841-46) On examination, there were decreased breath sounds bilaterally with no wheezing, rhonchi, or rales and normal pulmonary effort. (Tr. 844) She was told to follow up in six months. (Tr. 846)

## C.    Opinion Evidence

**CNP Fagan.** As noted in the foregoing summary, Brewer received letters from CNP Fagan in February and September 2021. The February letter stated that Brewer had "a known diagnosis of bronchitis with some significant shortness of breath with activity. She reports her symptoms are controlled when she does not exert herself….She has requested that she be permitted to return to work with light-duty. I am agreeable." (Tr. 654) The September letter provided that Brewer was diagnosed with moderate/severe COPD, "has struggled with shortness of breath and activity intolerance for several months, and has been off of work since February 2021." (Tr. 653) It was also noted that Brewer has demonstrated improvement with pulmonary rehabilitation and that Brewer would meet with pulmonology to discuss return to work potential. *Id.*

In addition to the letters, CNP Fagan completed a cardiac questionnaire in May 2021. (Tr. 425-27) She stated that she had not seen Brewer since February, but noted that Brewer had a normal echocardiogram and normal ECG in February and March of 2021. (Tr. 425) CNP Fagan stated that Brewer's symptoms were increased with physical activity and decreased with rest. *Id.*  Nonetheless, CNP Fagan stated it was unknown how often Brewer had symptoms or if symptoms persisted despite treatment. (Tr. 426) When asked if Brewer had any work-related restrictions, CNP Fagan answered "None, to my knowledge." *Id.*

5

**Dr. Amurao.**  On September 30, 2021, pulmonologist Guillermo Amurao V, M.D., provided a letter indicating Brewer could return to work with "the following restrictions: weight restriction of 5 lbs carry weight, with no prolonged standing/heavy weight-bearing, prolonged walking, avoid exposures to dusts, fumes, strong odors, excessive heat/humidity." (Tr. 652) Her further stated, " [t]his modified duty will continue until her follow up with this office January 14, 2022." (Tr. 652)

**State Agency Opinions:**  On September 10, 2021, State agency reviewing physician, Leslie Green, M.D., opined that Brewer could perform work with frequent lifting of 25 pounds and occasionally 50 pounds; could sit and stand or walk up to six hours per day; could occasionally climb ladders, ropes, scaffolds; and frequently climb ramps/stairs, balance, stop, kneel, crouch and crawl. (Tr. 91-92) Dr. Green also determined Brewer should avoid concentrated exposure to humidity; extreme hot or cold; and fumes, odors, dusts, gases, and poor ventilation. (Tr. 92)  On reconsideration in January 2022, State agency reviewing physician, Mehr Siddiqui, M.D., agreed with Dr. Green's environmental limitations and postural limitations (except for Dr. Siddiqui found Brewer should *never* climb ladders, ropes, or scaffolds). (Tr. 101-03) Dr. Siddiqui also agreed that Brewer could sit and stand or walk for up to six hours but found Brewer had more restricted lifting limitations (frequent lifting of 10 pounds and occasionally 20 pounds). (Tr. 102)

### D.    Hearing Testimony

On June 14, 2022, Brewer, represented by counsel, appeared for a telephonic hearing before ALJ Cromer.  Brewer testified to the following:

- She completed a bachelor's degree in business accounting but never worked in that field. Breathing difficulties affect her ability to work. She uses inhalers and nebulizers. She stated that fumes, odors, dust, pulmonary irritants, extreme cold, and extreme heat affect her ability to breath. She stated she gets out of breath sweeping.

- Her back also affects her ability to work. She has arthritis and disc deterioration. She has treated for back pain with "shots" and a procedure that "burnt the nerves" in her back but still has pain. She refuses to take any pain medication because she does not want to get addicted. She tried physical therapy but it did not help. She has not been referred for back surgery at this time. She stated she cannot sit or stand for too long and shifts positions. She does not use a cane or walker.

- She stated she gets migraines once every month with a recent one lasted a week. She treats with Tylenol and a nap. She also has stomach issues, depression, and anxiety. For her mental health impairments she goes to counseling but has "bad days" 3-4 days a week. She has custody of her grandchildren and cares for them with help from her boyfriend and adult child.

(Tr. 44-76)

A Vocational Expert, Jerry Olsheski ("VE"), also testified at the hearing (Tr. 65-70). The ALJ posed hypothetical scenarios to the VE about whether an individual of Brewer's age and education could work and, if so, what types of jobs could they perform with the following theoretical limitations:

1. Light work: occasional climbing ramps or stairs, but can never climb ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, or crawling; no work at unprotected heights or around hazardous machinery; no commercial driving; occasional right dominant overhead reaching; avoid concentrated exposure to cold, heat, humidity, wetness, pulmonary irritants, vibrations, loud construction noise; simple, routine work, no tandem work; no production pace work; only occasional decision-making; only occasional changes in the work setting. (Tr. 77-78)
   - The VE testified that the hypothetical person would be able to perform work as a hand packer; sorter; and mail clerk. (Tr. 78)

2. The ALJ then modified hypothetical #1 by changing light work to sedentary work.
   - The VE testified that the individual could work as an assembler; an inspector; or an address clerk. (Tr. 79)

The VE testified that typical breaks in a workday include two 15-minute breaks and one 30-minute lunch break. (Tr. 80) The ALJ then asked whether it would limit employment if a worker is off-task due to extra breaks for 20% of the shift on 3 out of 5 days of the work week. The VE testified that anytime a worker needs additional breaks it requires an accommodation form the employer and if

a worker is off task for more than 10% of the time on a consistent basis, they would likely be terminated. *Id.*

Brewer's counsel then asked the VE what would happen to the hypothetical positions if the individual had a restriction of lifting only five pounds. (Tr. 81) The VE stated the address clerk job would not change but the number of assembler and inspector jobs would be reduced by 50%. *Id.*

### III.    STANDARD FOR DISABILITY

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent her from doing his past relevant work, the claimant

8

is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant has not engaged in substantial gainful activity since April 12, 2021, the application date (20 CFR 416.971 et seq.).

2.  The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD); asthma; migraine; degenerative disc and joint disease of the thoracic and lumbar spines; obesity and subsequent overweight body habitus; status post remote right upper extremity nerve decompression; a depressive disorder; an anxiety disorder; and a posttraumatic stress disorder (PTSD) (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant should avoid climbing ladders, ropes, and scaffolds. She could occasionally climb ramps and stairs. She could occasionally balance, stoop, crouch, kneel, and crawl. The claimant should avoid work at unprotected heights and work around hazardous machinery. She could work in a position that did not require commercial driving. The claimant could occasionally reach overhead with the right dominant arm. She should avoid concentrated exposure to cold, heat, humidity, wetness, and pulmonary irritants. The claimant should avoid concentrated exposure to vibrations. The claimant should avoid concentrated exposure to loud construction level noise as defined by the DOT/SCO. The claimant could perform simple, routine work without tandem work. She could work in an environment with end of day work goals versus strict hourly production, where work was of a variable rate—not eliminating all manufacturing work—but in a manufacturing context limiting work with a production pace of an assembly line or where the machine sets the pace. The claimant could tolerate occasional decision making and occasional changes to the work setting.

5.  The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born in November 1980 and was 40 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 12, 2021, the date the application was filed (20 CFR 416.920(g)).

(Tr. 20-44)

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v.Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility

10

determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also His v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp.

2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); accord

*Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not

mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v.*

*Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D.

Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D.Ohio July 9, 2010).

## VI. ANALYSIS

Brewer presents two arguments for review. First, Brewer argues that the ALJ erred in her

analysis of the treating physicians' opinions. (Doc. Nos. 7, 10) Second, Brewer argues that the ALJ

was required to further develop the record. *Id.*

### A. Medical Opinion Analysis

Brewer argues that the ALJ erred in her analysis of the treating physicians' opinions. Brewer

argues that the opinions conflicted with the RFC and the ALJ erred by failing to explain how the

conflict was resolved.

#### 1.    Legal Standard

<u>Medical Opinions</u>

Since Brewer's claim was filed after March 27, 2017, the Social Security Administration's

new regulations ("Revised Regulations") for evaluation of medical opinion evidence apply to this

claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*,

2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under

the Revised Regulations, the Commissioner will not "defer or give any specific evidentiary

weight, including controlling weight, to any medical opinion(s) or prior administrative medical

findings, including those from your medical sources." 20 C.F.R. § 416.920c(a). Rather, the

Commissioner shall "evaluate the persuasiveness" of all medical opinions and prior

administrative medical findings using the factors set forth in the regulations: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 416.920c(a), (c)(1)-(5). However, supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(b)(2).

The Revised Regulations also changed the articulation required by ALJs in their consideration of medical opinions. The new articulation requirements are as follows:

> (1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

> (2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 416.920c(b)(1)-(2).

13

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" *Ryan L.F. v. Comm'r of Soc. Sec.,* No. 6:18-cv-01958-BR, 2019 WL 6468560, at *4 (D. Ore. Dec. 2, 2019)(quoting 20 C.F.R. §§ 404.1520c(a), (b)(1)). A reviewing court "evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Id.*

Residual Functional Capacity

SSR 96-8p provides guidance to ALJs on how to assess a claimant's RFC. It provides that a social security disability claimant's RFC is an assessment of the most a claimant can still do despite her limitations. SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)(1). Though an ALJ must consider all medical and non-medical evidence, "[t]he ALJ is charged with the responsibility of determining the RFC." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed.Appx. 719, 728 (6th Cir. 2013). When addressing medical source opinions, SSR 96-8p provides that, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8P at *7.

**2.     Analysis**

CNP Fagan

Brewer argues that the ALJ erred in her analysis of CNP Fagan's three opinions. In 2021, CNP Fagan drafted two letters regarding Brewer's impairments, as well a cardiac questionnaire. In a February 2021 letter, CNP Fagan stated the following:

Amy Brewer was seen in my office for an appointment on 2/18/2021. She has a known diagnosis of bronchitis with some significant shortness of breath with activity. She reports her symptoms are controlled when she does not exert herself. She tested negative for COVID-1 9, multiple times, as recently as yesterday. She has

14

requested that she be permitted to return to work with light-duty. I am agreeable.

(Tr. 654) On May 17, 2021, CNP Fagan completed a Cardiac Questionnaire for Brewer. She stated that she had last seen Brewer in February 2021 for pleuritic pain, chest tightness, and shortness of breath that was worse with activity. (Tr. 425-27) It was noted that rest relieved Brewer's symptoms and that Brewer treated with antibiotics and steroids. (Tr. 425-26) In response to a question stating, "Describe any restrictions to work-related activities," CNP Fagan answered "None, to my knowledge."(Tr. 426) CNP Fagan also answered that it was "unknown" whether Brewer's symptoms persisted despite treatment. *Id.* On September 7, 2021, CNP Fagan wrote another letter for Brewer. In the September letter, CNP Fagan stated that Brewer has "moderate/severe chronic obstructive pulmonary disease" and has "struggled with shortness of breath and activity intolerance for several months." (Tr. 653) CNP Fagan also noted that Brewer was receiving pulmonary rehabilitation therapy, demonstrated "some improvement" with therapy, and would be seeing a pulmonologist soon to discuss her return-to-work potential. *Id.*

Brewer argues that the two letters and the cardiac questionnaire support a finding that Brewer requires additional break periods in a workday (i.e., beyond two 15-minute breaks and one 30-minute lunch break). (Doc. No. 7 at 17) Brewer argues that the ALJ violated agency regulations by failing to adopt the limitation in the RFC or explain how the conflict was resolved.[2] However, CNP Fagan did not opine that Brewer would require additional break periods. Brewer's argument relies on a notation in the May 2021 questionnaire that rest relieves Brewer's shortness of breath. (Tr. 425) But a symptom notation is not an opinion.[3] *Alexander v. Kijakazi*, No. 1:20-CV-01549,

---

[2] Social Security Regulation 96-8p provides that "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20

[3] The May 2021 questionnaire explains that CNP Fagan had not seen Brewer since February 2021. In February 2021 CNP Fagan noted that Brewer reported "her symptoms are controlled when she does not exert herself." (Tr. 654) Thus, the May 2021 notation is based on Brewer's self-reported symptom.

2021 WL 4459700, at *11 (N.D. Ohio Sept. 29, 2021) (collecting cases) ("Plaintiff's statements made to medical sources…are not per se credible, nor are they transformed into 'medical opinions' simply because the patient's statements have been recorded in treatment notes.")

In the May 2021 questionnaire, CNP Fagan opined that Brewer had no work limitations and that it was "unknown" whether Brewer's symptoms persisted despite treatment. (Tr. 426) There is no indication that the ALJ viewed the symptom listing (shortness of breath with exertion) as an opinion and the ALJ was not required to do so. Instead the ALJ addressed the opinion that Brewer had no work limitations. (Tr. 39) The ALJ found the opinion persuasive in terms of cardiac limitations as the record lacked evidence of treatment for cardiac impairments. *Id.* Nonetheless, the ALJ determined that CNP Fagan's opinion that Brewer had "no work limitations" was inconsistent with other evidence.

In summation, CNP Fagan did not provide an opinion that Brewer would require exceeding the standard number of breaks in a workday. The ALJ addressed the opinion that was provided (i.e., no work limitations). Accordingly, the RFC does not conflict with an opinion from CNP Fagan and the ALJ explained her persuasiveness findings.

Dr. Amurao

Brewer also argues that the ALJ erred in her analysis of Dr. Amurao's opinion. On September 30, 2021, Dr. Amurao opined that Brewer would be able to return to work with the following restrictions: "weight restriction of 5 lbs carry weight, with no prolonged standing/heavy weight-bearing, prolonged walking, avoid exposure to dusts, fumes, strong odors, excessive heat/humidity." (Tr. 652) Dr. Amurao explained that Brewer's modified duty should continue until her next office visit in January 2022. *Id.* The ALJ provided the following assessment of the opinion:

> The undersigned has read and considered the September 2021 opinion from Dr. Amurao, M.D., evidenced at Exhibit 14F. Dr. Amurao opined the claimant would be able to return to

16

work with conditions of five pounds carrying weight, no prolonged standing/heavy weight bearing, prolonged walking, and she would need to avoid exposure to dusts, fumes, strong odors, and excessive heat/humidity. He noted the modified duty would continue through January 2022. The undersigned has not adopted Dr. Amurao's opinion verbatim, as the opinion was durational from the time it was assessed through January 2022 and there was no subsequent opinion submitted supporting the durational limitations continued beyond January 2022. While the undersigned has not adopted the opinion, the undersigned finds the opinion noting the claimant would experience exertional limitations and environmental limitations not inconsistent with the treatment notes of record. The record supported COPD/asthma with moderately severe obstruction via diagnostic testing and documented reports of residual shortness of breath with activity, despite the use of routine medications. However, while COPD/asthma was not resolved, the record does support there was some improvement in breathing function with pulmonary rehabilitation. The claimant continued to support symptom exacerbation when exposed to irritants and atmospheric conditions. The undersigned finds exertional limitations are not inconsistent with her history of breathing problems and dyspnea upon exertion, but are also consistent with her history of right upper extremity surgical intervention and self reported residual numbness, as well as documented thoracic and lumbar spinal degeneration with tenderness to the spine, reports of pain, and antalgic gait. Therefore, while not adopted, the undersigned finds the opinion persuasive, in so far as it supports exertional and environmental limitations.

(Tr. 39)

Brewer asserts that the ALJ erred in failing to adopt Dr. Amurao's opinions to avoid exposure to hazardous conditions and alternate between standing/walking. (Doc. No. 7 at 21-22) With regard to the standing/walking limitation, Dr. Amurao opined that Brewer should avoid, "prolonged standing/heavy weight-bearing, [and] prolonged walking." (Tr. 652) Brewer asserts that the "inability to perform prolonged standing or walking is akin to the need to alternate positions, which is potentially inconsistent with sedentary work." (Doc. No. 7 at 22) Agency regulations state that sedentary work involves mostly sitting and no more than occasional walking and standing. 20 C.F.R. § 416.967(a). Though the necessity of a sit/stand option could lower the availably of sedentary positions,  Dr. Amurao's letter does not state that Brewer needs to alternate between sitting and standing at will. In addition, none of Brewer's citations support her statement that avoiding prolonged walking or standing is equivalent to a need to alternate positions. *Id.*  As the

need to avoid prolonged standing and walking is not the same as a need to switch positions, there is no conflict between the RFC and Dr. Amurao's standing and walking limitation.

Brewer also argues that the ALJ erred in addressing environmental hazards in the RFC. Dr. Amurao opined Brewer should, "avoid exposure to dusts, fumes, strong odors, excessive heat/humidity." (Tr. 652) The RFC states that Brewer should avoid *concentrated* exposure to these irritants. Thus, Brewer argues that Dr. Amurao's environmental limitations (avoid exposure) were more restrictive than the RFC environmental limitations (avoid *concentrated* exposure). "[S]everal cases have found that avoiding concentrated exposure does not mean avoiding all exposure." *Norris v. Kijakazi*, No. 23-cv-00432-TWR-BLM, 2024 U.S. Dist. LEXIS 14506, at *16-17 (S.D. Cal. Jan. 26, 2024) (collecting cases).

As an initial matter, Brewer's environmental hazard argument is waived for failing to raise it during the administrative process. At the hearing, the ALJ posed a hypothetical to the VE about "concentrated" hazards. Brewer failed to raise an issue regarding the hypothetical during the hearing and failed to raise a question to the VE or ALJ about avoiding all hazards. Brewer also failed to address the issue in her brief to the Appeals Council. (Tr. 187-93) Though she summarized much of the medical evidence, including Dr. Amurao's opinion, Brewer argued the following:

> Here the ALJ fails to take into consideration how the claimant's combined severe impairments, effect her ability to complete sustained work on a regular and continued basis. Further, the claimant's treating physician limits the claimant to a 5 pound weight restriction (See Exhibit 14F). When taking into consideration all of claimant's impairments, she would be off task and/or miss work.

(Tr. 192) "It is axiomatic that a court should not consider an argument that has not been raised in the agency proceeding that preceded the appeal,'" *Maloney v. Comm'r of Soc. Sec.,* 480 F. App'x 804, 810 (6th Cir. 2012) (citation omitted); *See also Altman v. Comm'r of the SSA*, No. 5:22-CV-01546-CEF, 2023 U.S. Dist. LEXIS 130980, at *60-61 (N.D. Ohio July 7, 2023) (finding RFC issue

waived because counsel failed to question the VE on the issue or mention it in their brief to the
Appeals Council); *See also Vega v. Comm'r of Soc. Sec.*, No. 1:20-CV-01934-JRA, 2021 WL
6012038, at *8 (N.D. Ohio Dec. 3, 2021), report and recommendation adopted, No. 1:20CV1934,
2021 WL 6000037 (N.D. Ohio Dec. 20, 2021) ("The failure to object to evidence, or failure to
cross-examine a VE about a topic at the hearing, precludes the claimant from later raising the
issue.") citing *Zimmerman v. Comm'r of Soc. Sec.*, 1:18-CV-1233, 2019 WL 4736267 (N.D. Ohio
Sept. 27, 2019) (collecting cases). As Brewer failed to raise her hazards argument during the
agency's administrative review process, her argument is waived.

Even if Brewer had not waived the argument, the ALJ's decision does not require reversal
because the ALJ resolved the conflict. Brewer suggests that because the ALJ found Dr. Amurao's
opinion persuasive, she should have adopted the more restrictive environmental hazard limitation.
(Doc. No. 10 at 1-2) Brewer asserts that the ALJ's reasoning for not adopting Dr. Amurao's opinion
is not clear from the decision. The ALJ found Dr. Amurao's opinion was "persuasive in so far as it
supports exertional and environmental limitations." (Tr. 39) The ALJ explained that she was not
adopting the opinion "verbatim, as the opinion was durational." (i.e., it expressly stated that it lasted
only from September 2021 to January 2022)[4] (Tr. 39) The ALJ also noted that Brewer's
COPD/asthma issues showed "some improvement…with pulmonary rehabilitation." *Id.*

Brewer points to the ALJ's statement that Dr. Amurao's opinion supported "exertional and
environmental limitations." However, that statement does not indicate that the ALJ adopted all of

---

[4] Even when an opinion is accorded great weight, an ALJ need not adopt the opinion wholesale: *Taylor v. Colvin*,
2013 WL 6162527 at * 14–15 (N.D.Ohio Nov.22, 2013) (finding ALJ was not required to adopt every opinion of ME
"by virtue of the fact that, overall, he gave [the ME's] opinion great weight"); *See also White v. Comm'r of Soc. Sec.*,
2013 WL 4817673 at * 16 (N.D.Ohio 2013) (noting that "[t]he fact that the ALJ did not incorporate all of Dr. Castor's
restrictions, despite attributing significant weight to his opinion, is not legal error in and of itself"); *Smith v. Comm'r
of Soc. Sec.*, 2013 WL 1150133 at * 11 (N.D.Ohio March 19, 2013) ("Simply put, there is no legal requirement for an
ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining
physician's opinion, even when it is given great weight").

the exertional and environmental limitations listed in Dr. Amurao's letter. The ALJ only states that the opinion supports limitations. The ALJ made clear that she did not adopt the opinion verbatim. Though the paragraph discussing Dr. Amurao's opinion does not identify each of the exertional and environmental limitations that the ALJ adopted, reading the opinion as a whole allows the Court to follow the ALJ's reasonings. *Moscorelli v. Colvin*, No. 1:15CV1509, 2016 U.S. Dist. LEXIS 114820, 2016 WL 4486851, at *4 (N.D. Ohio Aug. 26, 2016), *citing Miller v. Soc. Sec. Admin.*, No. 3:14 2274, 2015 U.S. Dist. LEXIS 92542, 2015 WL 4394800, at *7 (M.D. Tenn. July 16, 2015) ("[I]t is only necessary that the ALJ's explanation, in the context of the decision as a whole, afford an opportunity for meaningful review so that the reviewing court can ensure that the decision is supported by substantial evidence.")

The ALJ found that the record supported COPD/asthma with moderately severe obstruction but "there was some improvement in breathing function with pulmonary rehabilitation." (Tr. 39) The ALJ also adopted the opinions of both State agency physicians that Brewer should avoid "concentrated exposure" to dusts, fumes, strong odors, excessive heat/humidity. (Tr. 41, 102) The ALJ stated that the State agency findings were "consistent with the claimant's pulmonary obstruction requiring inhaler medications and nebulizer treatment and with her testimony that symptoms increase when exposed to such factors." (Tr. 41) Nonetheless, the ALJ found that Brewer's headaches and back pain warranted greater environmental limits for exposure to noise and vibration than those opined by the state agency physicians. (Tr. 41) This Court has found that an ALJ can implicitly resolve a conflict between two medical opinions by adopting an RFC recommendation in one of the opinions. *Britton v. Berryhill*, No. 1:18-cv-39, 2018 U.S. Dist. LEXIS 220441, at *31-32 (N.D. Ohio Dec. 17, 2018). In addition, the ALJ explained that despite some

breakthrough shortness of breath Brewer's "respiratory symptoms continued to be well managed with conservative treatment." (Tr. 29-30; *See also* Tr. 36) The ALJ also found the following:

> [Brewer] admitted improvement in pulmonary symptoms and endurance after completing pulmonary rehabilitation. The record supports no need for any invasive treatment such as the supplemental use of oxygen. The claimant did not require any recurrent emergent treatment for COPD symptom exacerbation requiring any inpatient hospitalizations and use of invasive treatment modalities.

(Tr. 30)

To the extent a conflict exists regarding exposure to hazards, and Brewer has not waived her argument by failing to raise it at the administrative level, the ALJ's RFC determination is explained and supported by substantial evidence in the record. The ALJ found Dr. Amurao's recommendations were less persuasive as they were limited in duration, that Brewer's symptoms improved with conservative treatment, and that the State agency physician opinions restricting "concentrated exposure" to hazards were consistent with the record evidence.[5]

### B. Insufficient Record Argument

In her final argument, Brewer contends that the ALJ interpreted raw medical data and "relied upon her own interpretation of the objective evidence in the record over that of medical professionals."[6] (Doc. No. 7 at 23-24) Brewer asserts that the ALJ erred because "the record does not contain a medical opinion addressing the evidence submitted following the State agency

---

[5] In addition to the breathing and standing/walking limitations, Brewer contends that the ALJ erred by failing to adopt Dr. Amurao's 5-pound weight carrying restriction. However, the ALJ stated that she did not adopt the 5-pound weight limitation and noted that, even if she had, the VE's testimony supported that there would still be a substantial number of jobs with that limitation. (Tr. 25) Brewer has not shown that the ALJ erred in that determination.

[6] Brewer alternatively argues that "even if the ALJ was not required to obtain a medical opinion or base her decision upon a medical opinion, the ALJ was required to provide a logical bridge from the evidence to the RFC finding." (Doc. No. 10 at 10) However, Brewer's argument is vague and undeveloped. (Doc. No. 7 at 24-25) Therefore, the argument is waived. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (internal citations omitted); *Meridia Prods. Liab. Litig. v. Abbott Labs*., 447 F.3d 861, 868 (6th Cir. 2006); *See also Ehrhart v. Sec'y of Health & Human Servs*., 969 F.2d 534, 537 n. 5 (7th Cir. 1992) (applying waiver rule because judges need not devote time to "discussion of argument, raised if at all, 'in a very opaque manner.'").

physicians' review of the evidence." *Id.* at 23. This Court recognizes, "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Jones v. Colvin*, No. 5:13CV1781, 2014 WL 4594812, at *3 (N.D. Ohio Sept. 12, 2014) (quoting *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)). It is proper for the ALJ to rely on the state agency opinions, as long as subsequent evidence and any relevant changes in the claimant's condition are taken into account. *McGrew v. Comm'r of Soc. Sec.,* 343 F. App'x 26, 32 (6th Cir. 2009). Here, the most recent state agency opinion was approximately five months before to the ALJ's hearing and decision. [7] And the ALJ took into account subsequent evidence.

An ALJ is not required to base her RFC determination on a particular medical opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d) ("The determination of an individual's residual functional capacity is an issue reserved for the Commissioner."); *Mokbel-Aljani v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *See also Rudd v. Comm'r of Soc*. Sec., 531 F. App'x 719, 728 (6th Cir. 2013) (explaining that requiring an ALJ to base an RFC determination on medical opinions would transfer the statutory responsibility to determine if an individual is under a disability from an ALJ to a medical source); *Coldiron v. Comm'r of Soc. Sec*., 391 Fed. Appx. 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ – not a physician – ultimately determines a Plaintiff's RFC"); *Poe v. Comm'r of Soc. Sec*., 342 Fed. Appx. 149, 157 (6th Cir. 2009) ("an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding").

---

[7] Dr. Siddiqui's opinion was from January 2022 and the hearing and decision were dated June 2022. (Tr. 14, 17, 102)

Brewer contends that because the ALJ did not rely on a medical opinion to support the RFC, the ALJ had a duty to recontact her treating sources. This Court has held:

> In some circumstances, the ALJ may need to recontact a treating source, order a consultative examination, or have a medical expert testify at the hearing in order to develop the record fully, such as when the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations, or only an outdated non-examining agency opinion.

(Doc. No. 7 at 19 citing *Ulrich v. Comm'r of Soc*. Sec., 2022 WL 3030685, *10 (N.D. Ohio June 6, 2022), report and recommendation adopted sub nom., 2022 WL 3028096 (N.D. Ohio Aug. 1, 2022) (*citing Deskin v. Comm'r of Soc. Sec*., 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)). An opinion rendered five months before the ALJ's decision, where no substantive changes have occurred, is not "outdated." Also, there were multiple medical opinions from both the agency and Brewer's providers in this case. Thus, the ALJ had not duty to recontact a source or further develop the record.

Though Brewer argues that the number of opinions does not matter because, "the ALJ explicitly did not rely upon the opinions," a similar argument has been rejected by this Court on several occasions. (Doc. No. 10 at 5) For example, in support of her argument, Brewer twice references to this Court's opinion in *Falkosky v. Comm'r of Soc. Sec.,* 2020 WL 5423967, *8 (N.D. Ohio Sept. 10, 2020). However, in *Falkosky* there were no medical opinions rendered on claimant's functional limitations. Though two State Agency physicians reviewed the record in that case, both determined there was not enough evidence to opine on Falkosky's functional limitations. There were also no other medical opinions in the record. The Court held that, "[b]ecause there was no medical opinion on Falkosky's functional limitations, the ALJ had a responsibility to further develop the record." Unlike *Falkosky*, here there were multiple opinions on Brewer's functional limitations. This Court has found *Falkosky* distinguishable on a similar basis in several other cases. See e.g., *Roberts v. Comm'r of Soc. Sec*., No. 3:22-CV-00051-CEH, 2023 WL 4243225, at *19

23

(N.D. Ohio Jan. 23, 2023) (finding Falkosky did not apply where claimant had opinions from state agency consultants); *Gomori v. Comm'r of Soc*. Sec., No. 4:21-CV-401, 2022 WL 2611192, at *12 (N.D. Ohio Mar. 25, 2022) (finding Falkosky did not apply because "state agency reviewers provided opinions regarding Gomori's functional abilities."); *Fergus v. Comm'r of Soc. Sec*., No. 5:20-CV-02612-CEH, 2022 WL 743487, at *9 (N.D. Ohio Mar. 11, 2022) (distinguishing *Falkosky* because claimant had medical opinions that addressed functionality). Thus, an ALJ does not need to base her opinion on a particular medical source.

Here the ALJ formulated the RFC after assessing the medical and non-medical evidence. That evidence included opinions on Brewer's limitations from multiple medical professionals. Accordingly, Brewer has not shown that the ALJ erred.

## VII.   CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be **AFFIRMED**.

Date:  March 12, 2024                                     *s/ Jonathan Greenberg*
                                                           Jonathan D. Greenberg
                                                           United States Magistrate Judge

### OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**